RECEIVED
IN LAKE CHARLES, LA

MAR - 1 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CORNELIO CANTU AND MARIA CANTU | : | DOCKET NO. 2:06 CV 2168 |
| VS. | : | JUDGE MINALDI |
| C.B. FLEET HOLDING COMPANY, INC., AND C.B. FLEET COMPANY, INC. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is the defendants' Motion to Dismiss the Plaintiffs' Non-Louisiana Products Liability Act ("LPLA") Claims [doc. 3]. The defendants, C.B. Fleet Holding Company, Inc. and C.B. Fleet Company, Inc., argue that the plaintiffs' exclusive remedy is pursuant to the LPLA.

### Rule 12(b)(6)

On a F.R.Civ.P. Rule 12(b)(6) motion, the Court must view the plaintiffs' complaint in the light most favorable to the plaintiffs and must accept as true all of the factual allegations in the complaint.[1] The motion will be denied if the allegations support relief on any possible theory.[2] The court will "bend over backwards to avoid granting a 12(b) motion to dismiss."[3]

"The court's inquiry is directed to whether the allegations constitute a statement of a claim

---

[1] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S.Ct. 1160, 1161 (1993).

[2] *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994).

[3] *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).

under Rule 8(a)."[4] All that is required is that the petition include "a short and plain statement of the claim that gives the defendants fair notice of what the plaintiffs' claim is and the grounds upon which it rests."[5]

There is no requirement that the plaintiffs "set out in detail the facts upon which they base their claim."[6] General factual allegations are sufficient and the court "will presume that general allegations embrace those specific facts that are necessary to support the claim."[7] However, conclusory allegations concerning the legal affect of the events alleged do not have to be accepted by the court.[8]

## Facts

The plaintiffs, Cornelio and Maria Cantu, allege that in July 2004 and in March 2005, Mr. Cantu ingested two packages of C.B. Fleet Phospho-soda in preparation for colonoscopies. (Complaint ¶ VIII). The plaintiffs contend that the packages contained no product insert and that there were no warnings regarding kidney damage, kidney or renal failure, or risks to persons in Mr. Cantu's age group (Complaint ¶ IX). As a result, they were unaware of the dangers involved with the use of the Phospho-soda (Complaint ¶ XIV). The Cantus contend that prior to each colonoscopy, Mr. Cantu's creatinine and BUN levels were within normal ranges, but that after each procedure

---

[4] Wright & Miller, Federal Practice and Procedure Civil 2d, §1357 at n.11; *Leatherman*, supra at 1163.

[5] *Leatherman*, supra at 1163 (Quoting <u>Conley v. Gibson</u>, 78 S.Ct. 99, 103 (1957)).

[6] *Leatherman*, supra at 1163.

[7] *National Organization for Women, Inc. v. Scheidler*, 114 S.Ct. 798, 803 (1994) (quoting *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2137 (1992)).

[8] Wright & Miller, Federal Practice and Procedure: Civil 2d §1357, pp. 311-21.

concurrent testing revealed elevated levels of each (Complaint ¶ X).  As a result, Mr. Cantu was diagnosed with kidney failure (Complaint ¶ X).  The plaintiffs further allege that prior to the use of the Phospho-soda, Mr. Cantu was a relatively fit and healthy man, but he has since lost 72% of his kidney function (Complaint ¶ XI and XIII).

The plaintiffs allege that the Phospho-soda ingested by Mr. Cantu was defectively designed and/or manufactured and failed to contain adequate warnings of known risks.  The Cantus contend that the defendants are liable because they each allegedly manufactured, promoted, distributed and sold for profit Phospho-soda, which Mr. Cantu later ingested and thereafter suffered kidney failure.  The plaintiffs allege theories of liability pursuant to the Louisiana Products Liability Act ("LPLA")(Count I), as well as violations of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA")(Count II).

In Count I titled "Products Liability", the plaintiffs also include additional theories of liability, which the defendants submit are beyond the scope of the LPLA.  These theories include: (1) the defendants failed to perform adequate testing ((Complaint ¶ XIX); (2) the Phospho-soda was defective due to inadequate clinical trials, testing, study and reporting regarding the results of such clinical trials, testing and study (Complaint ¶ XXII); (3) negligence (Complaint ¶ XXIII and XXV); (4) breach of duty to exercise reasonable care in the formulation, sale, promotion, supply and/or distribution of Phospho-soda (Complaint ¶ XXIV); (5) negligent marketing practices (Complaint ¶ XXVI); (6) breach of implied warranty (Complaint ¶ XXIX and XXX); and (7) breach of implied warranty of merchantability and fitness for a particular purpose (Complaint ¶ XXXIII).

The defendants further submit that the plaintiffs' claims pursuant to the LUTPA (Count II, ¶¶ XXXVI and XLI) are not legally cognizable against a manufacturer under Louisiana law.

Analysis

The defendants argue that the Cantus' claim under the LPLA precludes the plaintiffs from bringing suit under the Louisiana Unfair Trade Practices Act ("LUTPA") or claims arising in tort. The Products Liability Act serves as the exclusive theory of liability for damages caused by a product. The relevant portion of the Louisiana Products Liability Act notes:

> This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter. Conduct or circumstances that result in liability under this Chapter are "fault" within the meaning of Civil Code Article 2315.

La.Rev.Stat. Ann. § 9:2800.52 (West 2006).

*Avondale Industries, Inc. v. Tyco Valves and Controls, Inc.*, L 22697180, *1 -2 (E.D.La., 2003).

Despite the exclusivity language of LTPA, the plaintiffs argue that they are entitled to pursue a cause of action under the Louisiana Unfair Trade Practices Act. *Bracey v. C.B. Fleet Holding Co., Inc.*, 2006 WL 3733808, *2 (E.D.La.) (E.D.La., 2006) was another case claiming damages resulting from the use of Phospho-soda. The same argument was set forth in *Bracey*. The Court found the arguments by the plaintiffs unpersuasive. The plaintiffs argued that, because the LUTPA offers remedies distinct from those available via the LPLA, they should be allowed to pursue their LUTPA claims despite the exclusivity of the LPLA. The court ruled that the exclusivity of the LPLA is well-established in both the statute and its attendant case law, denying the plaintiffs' motion to reconsider the granting of the defendants' motion to dismiss LUTPA claims.[9]

---

[9] *See* La.Rev.Stat. § 9:2800.52 ("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in [the LPLA]."); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250-51 (5th Cir.1997); *Hilton v. Atlas Roofing Corp.*, No. 05-4204, 2006 U.S. Dist. LEXIS 30284, at *6 (E.D.La. May 17, 2006)

The LUTPA is penal in nature in that it allows the recovery of treble damages and attorney's fees. Punitive damages are not recoverable under the LPLA.[10] The defendants argue that if this court were to permit the plaintiffs to allege a cause of action for violations of LUTPA, it would be contrary to the fundamental principals of the LPLA. The court agrees. The motion to dismiss the plaintiffs' LUTPA claims (Count II) will be granted.

The defendants also argue that Count I of the Complaint contains allegations outside the exclusive provisions of the LPLA. These claims are: (1) the defendants failed to perform adequate testing (Complaint ¶ XIX); (2) the Phospho-soda was defective due to inadequate clinical trials, testing, study and reporting regarding the results of such clinical trials, testing and study (Complaint ¶ XXII); (3) negligence (Complaint ¶¶ XXIII, XXV); (4) breach of duty to exercise reasonable care in the formulation, sale, promotion, supply and/or distribution of Phospho-soda (Complaint ¶XXIV); (5) negligent marketing practices (Complaint ¶¶ XXIX, XXX); and (7) breach of implied warranty or merchantability and fitness for a particular purpose (Complaint ¶XXXIII).

Under the LPLA, the plaintiff has the burden of proving that an allegedly defective product was unreasonably dangerous in one of four ways: 1) construction or composition; 2) design; 3) because of an inadequate warning; or 4) because of nonconformity to an express warranty.[11] The

---

(Africk, J.); *Lacey v. Bayer Corp.*, No. 02-1007, 2002 U.S. Dist. LEXIS 9647, at *4 (E.D.La. May 23, 2002) (Porteous, J.).

[10] *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, 2006 WL 2921975 (W.D.La. 10/12/06) ("The LPLA does not authorize the award of punitive damages or attroney's fees.").

[11] *Ashley v. General Motors Corp.*, 22, 851 (La.App. 4th Ci4.5/16/95), 666 So.2d 1320, 1322.

5

LPLA expressly provides: "A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory not set forth in the LPLA." La. R.S. 9:2800.52. Based on this unequivocal statutory language, courts routinely dismiss claims against manufacturers that do not arise under the LPLA.[12] It is well-settled that the LPLA does not permit a plaintiff to recover under any theories of liability, including negligence, fraud and misrepresentation. The plaintiffs' claims listed above are "well outside the scope of the LPLA and must be dismissed."[13]

Accordingly, the defendants' motion to dismiss will be granted and all non-LPLA claims will be dismissed.

Lake Charles, Louisiana, this 28 day of February, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[12] *Jefferson v. Lead Industries*, 106 F.3d 1245, 1251 (5th Cir.1997) (affirming dismissal of plaintiff's claims of negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness, and civil conspiracy due to exclusivity of the LPLA); *Brown v. R.J. Reynolds Tobacco Co.*, 852 F.Supp. 8,9 (E.D.La.1994), aff'd, 52 F.3d 524 (5th Cir.1995) (dismissing plaintiff's claims for fraudulent misrepresentation, concealment, and conspiracy due to LPLA's exclusivity); *Grenier v. Medical Engineering Corp.*, 99 F.Supp.2d 759, 765-63 (W.D.La.2000), aff'd, 243 F.3d 200 (5th Cir.2001) (holding that plaintiff's claims for strict liability, negligence, breach of warranty of fitness for particular purpose, breach of implied warranty, misrepresentation, fraud by concealment, false advertising, negligent infliction of emotional distress, common plan to prevent public awareness of breast implant hazards, and future product failure were not cognizable under the LPLA).

[13] Lacey v. Bayer Corp. L 1058890, *1 -2 (E.D.La.,2002); *Grenier*, 99 F.Supp.2d at 763.